## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GREGORY WEST,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-23-01661** |
| **ALEJANDRO N. MAYORKAS,** | * | |
| **Defendant.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### MEMORANDUM

Plaintiff Gregory West has brought this employment discrimination and retaliation action against Defendant Alejandro Mayorkas in his capacity as the Secretary of the Department of Homeland Security ("DHS"). Now pending before the Court is DHS's Motion to Dismiss or, in the Alternative, for Summary Judgment (the "Dispositive Motion"). (ECF No. 28.)   The Dispositive Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, the Dispositive Motion, construed as a motion to dismiss, will be granted, and the operative Amended Complaint (ECF No. 25) will be dismissed.

## I.      BACKGROUND

### A.  Factual Allegations[1]

Plaintiff is an African American man from Frederick County, Maryland. (Am. Comp. ¶ 1.) Plaintiff is, and has been at all relevant times, a DHS employee within the Immigration and Customs Enforcement agency ("ICE"), stationed at the DHS/ICE Baltimore Field Office. (*Id.* ¶¶ 1, 24.) Plaintiff was hired by DHS in 2003, and since 2007, he has worked within the

---

[1] For the purposes of evaluating a motion to dismiss, the Court assumes the well-pleaded facts alleged in a complaint are true. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Enforcement Removal Operations ("ERO") division of ICE, and specifically within the Fugitive Operations Program ("FUGOPS").  (*Id.* ¶¶ 20, 21, 25.)  Plaintiff alleges that the following 14 unfavorable incidents occurred during his employment, which the Court will subsequently refer to by number:

1)     In September 2013, Plaintiff left his "laptop and thumb drive on the back seat of his government vehicle." (*Id.* ¶ 25.) As a result, "Plaintiff was issued a letter of counseling by the acting deputy of field officer, (DFOD)," who was a white man. (*Id.*)  Plaintiff alleges that none of his "similarly situated White and or female co-workers received letters of counseling for the same and or similar conduct." (*Id.*)

2)     In March 2014, Plaintiff was "pulled off of his assignment with the U.S. Marshall's [*sic*] task force by his Assistant Field Officer Director (AFOD, a White Male)." (*Id.* ¶ 26.)  This assignment "was a career enhancing assignment." (*Id.*)  Plaintiff alleges that "similarly situated female and White co-workers were allowed to remain on said task force" and that he would have been allowed to remain on the task force were he white or female. (*Id.*)

3)     In September 2014, Plaintiff's "Field Office Director (FOD)" suspended Plaintiff for two days without pay "for being involved in a minor vehicle accident in which Plaintiff was not at fault." (*Id.* ¶ 27.) Plaintiff alleges that similarly situated female and white coworkers "who were involved in the same and or similar accidents where they were not at fault were not suspended nor disciplined nor issued a letter of counseling." (*Id.*)

4)     In August 2016, Plaintiff's "Supervisory Detention and Deportation Officer (SDDO) FUGOPS, assigned [him] an hourly work schedule and demanded that certain work be completed that same day." (*Id.* ¶ 28.) These orders "directly conflicted with the nature of Plaintiff's work as a Deportation Officer and Plaintiff's job description." (*Id.*)  Similarly

2

situated white and female coworkers were not subject to these requirements.  (*Id.*)

5)      Also in August 2016, Plaintiff's AFOD at Fugitive Operations told him that "FUGOPS was not the place for him [and] that Plaintiff should just retire, implying that Plaintiff[] was too old for the job."  (*Id.* ¶ 29.)  Similarly situated white, female, and younger employees were not subject to this treatment.  (*Id.*)

6)      In September 2016, Plaintiff's SDDO "followed Plaintiff while Plaintiff was himself conducting surveillance on a target."  (*Id.* ¶ 30.)  Plaintiff was the only African American member of the team, and four team members were white.  (*Id.*)  It was "not required or otherwise necessary" for the supervisor to follow him, and similarly situated female and white coworkers were not followed.  (*Id.*)

7)      Also in September 2016, Plaintiff's SDDO assigned him to "trash collections duties," even though his "work assignment and job description was that of fugitive operations and deportations, not trash collections."  (*Id.* ¶ 31.)  Similarly situated white and female colleagues in fugitive operations and deportation "were not subject to the same requirements and or treatment."  (*Id.*)

8)      In August 2017, Plaintiff's SDDO "falsely accused [him] of failure to run criminal history checks" and Plaintiff "was issued a letter of counseling."  (*Id.* ¶ 32.)  "Similarly situated younger, Females and White co-workers were not issued letters of counseling for the same and or similar conduct."  (*Id.*)

9)      In September 2017, Plaintiff's AFOD accused him "of failure to follow instructions, neglect of duty and exhibiting disrespectful conduct towards a supervisor" and he was "issued a letter of reprimand."  (*Id.* ¶ 33.)  "Plaintiff's similarly situated younger, Female[] and White co-workers were not issued letters of reprimand for the same and or similar conduct."  (*Id.*)

10)   Also in September 2017, "Plaintiff's unit supervisor notified Plaintiff that Baltimore Field Office was investigating his then outside business." (*Id.* ¶ 34.) "Plaintiff's similarly situated younger, Female[] and White co-workers were not subject to like and or same scrutiny for exercising the same or similar employment privileges and or opportunities." (*Id.*)

11)   "Beginning on or about Mid 2017 to early 2018[,] Plaintiff's SDDO Non-Detained Unit conducted daily monitoring of [his] arrival at his work location." (*Id.* ¶ 35.) "Plaintiff's similarly situated younger, Female[] and White co-workers were not subject to like and or same scrutiny, demeaning and harassing treatment." (*Id.*)

12)   "From late 2017 and 2018 Defendant unlawfully and discriminatorily denied Plaintiff the same rights, privileges and opportunities of employment as his similarly situated younger, female and White co-workers by denying Plaintiff the opportunity to choose how and when to use his personal leave time." (*Id.* ¶ 36.) "Plaintiff's similarly situated younger, Female[] and White co-workers were not subject to like and or same unlawful discriminatory treatment for exercising the same or similar employment privileges and or opportunities."

13)   For fiscal year 2018 (October 1, 2017 to September 30, 2018) Plaintiff received a "minimal performance rating from his then supervisor," Katie Riesner, who was a white woman. (*Id.* ¶ 37.) This was "the first time in his career" that Plaintiff received such a rating. (*Id.*) "Upon complaining of said unlawful discriminatory treatment," Riesner was then "forced to give Plaintiff a higher satisfactory rating." (*Id.*) Plaintiff would not have been subject to this treatment were he "younger, White and or Female." (*Id.*)

14)   Finally, from 2015 through 2020, Plaintiff faced resistance and, ultimately, threats of termination from DHS in connection with Plaintiff's request for approval to pursue outside employment providing "physical security services" to businesses including "a state licensed

4

Marijuana Company." (*Id.* ¶¶ 38–45.) Plaintiff initially requested approval in July 2015 and received interim approvals from various supervisors the following month. (*Id.* ¶ 38.) Final approval occurred about a year and a half later, on March 7, 2017, when Dorothy Herera-Niles, the director of the Baltimore Field Office, gave her approval. (*Id.*) Plaintiff attributes this delay to SDDO Ray Smith, who "detained/hid Plaintiff's application for employment for nineteen[] months effectively and unlawfully discriminating against Plaintiff[.]" (*Id.* ¶ 39) Plaintiff believes that Smith's actions were the fulfillment of Smith's statement from April 2015 that "[i]f I were your supervisor, I would get you." (*Id.* ¶ 40.)

Later, on June 22, 2020 and on October 30, 2020, "Defendant by and through its various agents and employees [t]hreatened to terminate Plaintiff[']s employment for pursuing his choice of outside employment[.]" (*Id.* ¶ 41.) These threats occurred despite the March 2017 approval and despite a statement by the ICE ethics counsel's office that "there was nothing illegal and or no issues with Plaintiff providing physical security services for said licensed marijuana facility." (*Id.* ¶ 43.) Because of these threats, Plaintiff was forced "to divest himself of all interest in his company out of fear of defendant terminating his employment," notwithstanding the existence of "fully executed multiyear contracts to provide" security services. (*Id.* ¶ 44.)

Plaintiff alleges that similarly situated younger, female, and white coworkers were not subject to the same course of conduct. (*Id.*) Plaintiff alleges that this conduct was "in part motivated out of retaliation against Plaintiff" because of his complaints to the agency and his filing of an EEO complaint alleging discrimination. (*Id.* ¶ 45.)

**B.    Procedural History**

On July 21, 2020, Plaintiff filed an "informal complaint of employment discrimination on

5

the basis of race, gender, age and retaliation" with DHS.  (Am. Comp. ¶ 4.)  On November 11, 2020, Plaintiff filed a "formal complaint" with DHS.  (*Id.* ¶ 5.)  A copy of the DHS Office for Civil Rights and Civil Liberties ("CRCL")'s "Final Agency Decision," dated March 10, 2023, is attached to the Amended Complaint as an exhibit. (ECF No. 25-1.)  That decision includes many of the allegations made in the Amended Complaint as well as other allegations that were not included in the pleading.  (*See generally id.*)  The CRCL found that Plaintiff failed to prove that ICE discriminated or retaliated against him and thus found in favor of DHS.  (*Id.* at 18.)  The CRCL advised Plaintiff that he had the right to appeal the Final Agency Decision by filing suit in the appropriate federal district court within 90 days.  (*Id.* at 20.)

Meanwhile, in February 2021, Plaintiff also brought an action before the Merit Systems Protection Board ("MSPB"), an independent federal agency that adjudicates disputes between federal employees and employers.  (*See* ECF No. 33-1 at 9–10.)  In this proceeding, Plaintiff appealed DHS's imposition of a 30-day suspension for his outside employment activities and for his failure to carry his government-issued firearm while on duty.  (*Id.*; ECF No. 28-7.)  This proceeding partially implicated the allegations comprising Claim 14, insofar as both at least partially involved DHS's dissatisfaction with Plaintiff's pursuit of outside employment.  It is not entirely clear what arguments Plaintiff raised before the MSPB, as it does not appear that the briefing is in the record that is currently before the Court.[2]  On November 1, 2021, Administrative Judge Mark Syska of the MSPB issued his Initial Decision, sustaining the agency's charges against Plaintiff, but mitigating the penalty to a written reprimand rather than a suspension.  (ECF No. 28-

---

[2] In Plaintiff's initial filing of appeal to the MSPB, one of the prompts on the form Plaintiff used asked him to "[e]xplain briefly why you think the agency was wrong in taking this action."  (ECF No. 33-1 at 23.)  Plaintiff responded "See Continuation Sheet for Response."  (*Id.*)  But the "Continuation Sheet" is not in the record, so the Court has no way of knowing what issues Plaintiff identified. To the extent that the MSPB briefing is found somewhere in DHS's unorganized nearly 3,000 pages of exhibits, the contents of the briefing would not change any part of the Court's holdings.

7 at 5, 15.)  Pursuant to 5 C.F.R. § 1201.113, that Initial Decision became the MSPB's Final decision 35 days after its issuance, as neither party filed a petition for review. (ECF No. 28-7 at 2.) Judge Syska's opinion focuses solely on matters of civil service law and contains no discussion whatsoever of discrimination, retaliation, or harassment. (*See generally* ECF No. 28-7.) It is not clear from the record whether Plaintiff raised such issues before the MSPB and Judge Syska declined to address them, or whether he failed to raise those issues in the first place.

The relationship between the CRCL's decision and the MSPB's decision is somewhat unclear. In a letter to Plaintiff dated September 2, 2021, sent by the DHS's Office of Diversity and Civil Rights ("ODCR"), ODCR informed Plaintiff that, because he was challenging his 30-day suspension before the MSPB, that claim "will not be addressed as part of [the CRCL] case." (ECF No. 28-2 at 98.) Moreover, in a footnote in its Final Decision, the CRCL stated that it "d[id] not need to [] address[]" Plaintiff's allegation relating to his being placed on administrative leave in connection with his outside employment (ECF No. 25-1 at 4 n.3), but notwithstanding this footnote, the CRCL did in fact briefly address this allegation and determine that it was meritless. (*Id.* at 17–18.) Other than the brief discussion of Plaintiff's being placed on administrative leave, however (an event that is not included in the Amended Complaint), neither the CRCL decision nor the MSPB's decision grapples at any length with Plaintiff's claims of discrimination in connection with DHS's resistance to his pursuit of outside employment.

Plaintiff initiated this action by filing a *pro se* complaint in this Court on June 20, 2023. (ECF No. 1.) Plaintiff subsequently retained counsel and the Court granted him leave to amend the complaint, and denied as moot DHS's earlier dispositive motion, which had been directed toward the initial complaint. (ECF No. 24.) Plaintiff filed the operative First Amended Complaint on January 24, 2024. (ECF No. 25.) Counts I and II of the Amended Complaint allege that DHS

7

discriminated against Plaintiff on the basis of his race and gender, respectively, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).  (Am. Comp. ¶¶ 46–57.)  Count III alleges that DHS also discriminated against him on the basis of his age, which the Court will construe as an allegation of a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.[3]  (*Id.* ¶¶ 58–63.)   Count IV alleges that DHS retaliated against Plaintiff for filing discrimination charges against him, in violation of 42 U.S.C. § 2000e-3(a).  Defendant filed the instant Dispositive Motion on March 8, 2024.  (ECF No. 28.)

## II.     LEGAL STANDARDS

### A. Appropriate Standard

DHS has captioned its Dispositive Motion as one for summary judgment or, in the alternative, a motion to dismiss.  "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint."  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quotation omitted).  However, if the motion is in the alternative a motion for summary judgment a court may in its discretion consider matters outside of the pleadings.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  If the court does so, generally "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable

---

[3] The Complaint cites to Title VII, 42 U.S.C. § 2000e-2(a) as the basis for Plaintiff's age discrimination claim, but that statute makes no mention of age as a protected category.  Instead, the proper statutory vehicle for an age discrimination claim is the ADEA, 29 U.S.C. § 623.  Defendant argues that Plaintiff's failure to cite to the correct statute it itself a sufficient reason to dismiss the age discrimination claim.  (ECF No. 28-1 at 25.)  But courts do not dismiss a plaintiff's claim for citation to the wrong statute, so long as the basis for the claim is clear from the face of the complaint.  *Nester v. Hampton Inn Princeton*, Civ. No. 1:13-03336, 2013 WL 5425123, at *4 (S.D. W. Va. Sept. 26, 2013).  This is especially the case when, as here (*see* ECF No. 33-1 at 13), the plaintiff acknowledges the error in responsive briefing and there is no harm to the defendant.  *Hatmaker v. Memorial Md. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the Court will generally not consult the evidence DHS attached to its Motion. DHS has attached to its Dispositive Motion nearly 3,000 pages of exhibits. DHS did not provide any index or table of contents, and neither the order of documents nor the nature of each document is readily apparent to the Court. Thus, the Motion was not compliant with this District's Local Rules for exhibits. *See* Local Rule 105.5 (D. Md. 2023.) Accordingly, the exhibits attached to Defendant's Dispositive will be struck from the record, except with respect to Exhibit 2 (ECF No. 28-7), which the Court finds necessary to consult for the purpose of determining its own jurisdiction over the case.

Because the Court will consult only evidence from the pleadings and documents either attached to the pleading or documents integral to the pleadings and for which authenticity is not disputed, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016), the Court will construe the Dispositive Motion as a motion to dismiss under Federal Rule of Civil Procedure 12.

Because the Amended Complaint is deficient on its face, it will be dismissed.

### B. Legal Standard for Motion to Dismiss under Rule 12(b)(1)

A party may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). But if the defendant argues that the jurisdictional facts alleged in the complaint are untrue, then "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.*

Here, DHS does not allege that the jurisdictional facts are untrue, but rather that the

Complaint—considered alongside the MSPB decision—fails to establish federal jurisdiction.[4]  So, the Court will assume the truthfulness of the well-pleaded factual allegations when determining whether it has subject matter jurisdiction.

### C. Legal Standard for Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint's claims. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).  When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  However, conclusory allegations are not entitled to the assumption of truth, nor are legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).  To survive a motion to dismiss, the complaint "must include 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Langford*, 62 F.4th at 124 (quoting *Iqbal*, 556 U.S. at 678 (2009)).  In assessing a motion to dismiss, the Court limits its review to the complaint, documents attached to the complaint as exhibits, and documents attached to the motion, if those documents are integral to the complaint and their authenticity is not disputed. *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021).[5]

---

[4] The Court may properly consider the MSPB's decision, even though it was attached to the Dispositive Motion and not the Amended Complaint, because its existence is integral to the Complaint and Plaintiff does not dispute its authenticity. *See Goines*, 822 F.3d at 164.

[5] Plaintiff's briefing repeatedly refers to the "26 allegations" that Plaintiff raised during the EEO process. (*See* ECF No. 33-1 at 7.)  But, as the Court has already observed, many of the allegations that Plaintiff raised during the EEO process were not subsequently alleged in the operative Amended Complaint.  For example, in the EEO process Plaintiff complained about his supervisor denying him a request for emergency leave in 2018 (*see* ECF No. 25-1 at 15), an allegation that appears nowhere in the Amended Complaint.  "A plaintiff is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." *Blissful Enters., Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 198 (D. Md. 2019), *aff'd*, No. 19-2217, 2022 WL 6671618 (4th Cir. Oct. 11, 2022) (quotation omitted).  Although Plaintiff

Finally, as relevant here, an employment discrimination plaintiff need not plead a prima facie case to survive a motion to dismiss; instead, the plaintiff must simply plausibly allege facts that, taken as true, allow a court to reasonably infer that the elements of a cause of action have been satisfied. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616–17 (4th Cir. 2020).

## III.     SUBJECT MATTER JURISDICTION

The Court begins, as it must, with the question of its jurisdiction. DHS argues that the Court has no subject matter jurisdiction over Claim 14 because that claim implicates the case that Plaintiff brought before the MSPB, and it is undisputed Plaintiff did not file the instant action until June 2023, far beyond the 30-day window for appealing MSPB decisions under 5 U.S.C. § 7703(b)(2). (ECF No. 28 at 22–24.) To evaluate this argument, some explanation of the complicated statutory regime for appeals from the MSPB is needed. As one court has explained:

> When a serious adverse personnel action, such as a discharge, demotion, or reduction in pay, is taken against a federal employee, the employee may appeal the adverse action to the [MSPB]. . . . An appeal to the MSPB may allege that the personnel action was impermissible solely as a matter of civil service law, or the appeal may allege that the personnel action was taken, in whole or in part, based on discrimination prohibited by another federal statute, such as Title VII of the Civil Rights Act. *See* 5 U.S.C. § 7702. These latter types of actions are known as "mixed cases" because they allege violations of both civil service law and civil rights law. *See* 29 C.F.R. § 1614.302.

*Rodgers v. Perez*, 139 F. Supp. 3d 67, 71 (D.D.C. 2015).

An employee unhappy with the MSPB's decision may obtain judicial review in federal court, but both the time to take an appeal and the court in which to file the appeal depends on the kind of case that was before the MSPB. If the case is not a mixed case, an aggrieved employee generally can obtain judicial review of an MSPB decision by filing a petition in the U.S. Court of

---

attached the CRCL's final decision to his Amended Complaint (*see* ECF No. 25-1), nothing in the body of the Amended Complaint suggests that Plaintiff intended to pursue, in the instant action, all the claims that he brought before the CRCL. Accordingly, the Court considers only the allegations in the Amended Complaint, and not the broader set of allegations that Plaintiff raised in the EEO process.

Appeals for the Federal Circuit within 60 days of the MSPB's final decision.  5 U.S.C. § 7703(b)(1).  However, "if the MSPB decides against the employee on the merits of a mixed case, the statute instructs her to seek review in federal district court under the enforcement provision of the relevant antidiscrimination laws." *Perry v. Merit Sys. Protection Bd.*, 582 U.S. 420, 426 (2017).  Moreover, the statute provides that "[n]otwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action."  5 U.S.C. § 7703(b)(2).  Thus, generally, appeals from the MSPB must be taken to the Federal Circuit within 60 days, but appeals of mixed cases from the MSPB must be taken to federal district court within 30 days.

DHS's argument that this Court lacks subject matter jurisdiction over untimely appeals from the MSPB is squarely foreclosed by the Supreme Court's recent decision in *Harrow v. Department of Defense*, which was issued on May 16, 2024, several days after briefing on the instant Dispositive Motion concluded.  601 U.S. 480 (2024).  In *Harrow*, the Supreme Court examined the 60-day time limit for appealing an adverse decision of the MSPB to the Federal Circuit under 5 U.S.C. § 7703(b)(1).  The Court explained that statutory time bars are ordinarily non-jurisdictional claims-processing rules, unless Congress clearly states that courts have no jurisdiction over untimely claims.  601 U.S. at 484.  The Court held that § 7703(b)(1) was no exception to the ordinary rule, and that the 60-day time limit was a non-jurisdictional limitation presumptively subject to equitable tolling.  *Id.* at 485, 489.

*Harrow* focused on the 60-day time limit for appeals to the Federal Circuit under § 7703(b)(1), rather than the 30-day time limit for appeals to federal district courts under §7703(b)(2).  However, the Court concludes that *Harrow*'s reasoning is equally applicable to the latter provision.  Both provisions use identical language in setting out the time limit for appeals.

12

*Compare* 5 U.S.C. § 7703(b)(1) *with id.* § 7703(b)(2). Thus, to the extent that DHS argues that

Plaintiff's claims relating to issues before the MSPB are untimely, that argument does not implicate

this Court's subject matter jurisdiction but rather goes to the merits. For these reasons, the 30-day

time bar under § 7703(b)(2) is no barrier to this Court's jurisdiction, and accordingly the Court has

jurisdiction over this action under the general federal question statute, 28 U.S.C. § 1331.

## IV.     FAILURE TO STATE A CLAIM

DHS argues that most of Plaintiff's claims are time-barred, and to the extent any are not

time-barred, they fail to state a claim because his allegations are conclusory and fail to identify

adverse employment actions.[6] (ECF No. 28 at 24–30.) Turning first to Claims 1 through 13, the

Court concludes that these claims, which arose before June 2020, are all time-barred and therefore

must be dismissed. And, although the Court will not treat Claim 14 as time-barred, it nevertheless

fails to plausibly state a claim for discrimination or retaliation and must therefore be dismissed.

### A.  Claims 1 through 13

#### *1.  Legal Background*

Under the applicable regulations, a federal employee complaining of discrimination in the

---

[6] In DHS's Memorandum in support of the Dispositive Motion, it initially argued only that Claims 3 and 13 are time-barred. (ECF No. 28-1 at 29–30.) However, in Plaintiff's Response, he argued that *none* of his claims are time-barred. (ECF No. 33-1 at 10–12.) In DHS's Reply, it countered by arguing that Claims 1 through 13 (not just claims 3 and 13) are time-barred. (ECF No. 34 at 6–8.) Ordinarily, a court will not consider arguments raised for the first time in a reply brief. *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 535 (D. Md. 2010). However, "the power to decline consideration of such arguments is discretionary, and the courts are not precluded from considering such issues in appropriate circumstances." *Id.* (quotation omitted). Here, the Court finds it appropriate to consider whether all 13 claims are time-barred. The rationale behind not considering arguments raised in a reply brief is, in large part, that it is unfair to consider arguments to which an opposing party had no chance respond. But here, Plaintiff preemptively argued that *all* of his claims (not just Claims 3 and 13) were not time-barred. Thus, Plaintiff has fully presented his position on the issue to the Court, and it is not unfair for the Court to consider the question of whether all the claims are time-barred. Moreover, DHS *did* argue in its opening brief that Plaintiff failed to establish a hostile work environment as to any claim (ECF No. 28-1 at 31–32), and—as the Court will explain—Claims 1 through 13 are timely only if they adequately allege a hostile work environment.

workplace must initiate contact with an EEO counselor within 45 days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a). A plaintiff's failure to initiate contact within the 45-day window "is tantamount to failure to timely exhaust all administrative remedies." *Blount v. Dep't of Health & Hum. Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004). Thus, "[a] plaintiff's failure to contact an EEO counselor within this time period requires dismissal of claims arising before that 45-day period, absent specific circumstances warranting waiver." *Onwudiwe v. Becerra*, Civ. No. TDC-21-1620, 2023 WL 5338156, at *7 (D. Md. Aug. 18, 2023) (citing *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013)).

When a plaintiff alleges multiple discrete acts of discrimination and the EEO process was not timely initiated, those claims will be held to be time-barred even if the discrete acts were related to acts that were timely challenged. *Guessous v. Fairview Prop. Invests., LLC*, 828 F.3d 208, 222 (4th Cir. 2018). If, however, a plaintiff alleges a hostile work environment as opposed to simply discrete acts of discrimination, then, under the "continuing violation" theory, the entire claim "will be considered timely if at least one act continuing the violation occurred within the statutory period." *Id.*; *see also Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").

Here, it is undisputed that Plaintiff did not contact an EEO counselor within 45 days of any of the incidents that gave rise to Claims 1 through 13. Plaintiff also does not argue that any of the traditional bases for waiver of the time limit apply. *See Onwudiwe*, 2023 WL 5338156, at *7 (listing the bases for waiver of the time limit). And his arguments that "it would be unreasonable to require" him to sue earlier because "at that time he did not have the information necessary to

14

comprehend the racially discriminatory nature of the incidents which occurred between 2013 and 2020" (ECF No. 33-1 at 10), is foreclosed by caselaw.[7]  So, Plaintiff's claims are time-barred unless he can demonstrate that he suffered from a hostile work environment and that one act constituting the claim occurred within the time period.

To state a claim for a hostile work environment, a plaintiff must show (1) unwelcome conduct; (2) that is based on a plaintiff's protected status (*e.g.*, race, sex, or age); (3) that is sufficiently severe or pervasive so as to make the work environment hostile or abusive, and (4) that is imputable to the employer. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (en banc); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Here, Plaintiff stumbles at the third step because the alleged facts, taken as true, constitute neither a severe nor pervasive course of conduct. And, even if the conduct were severe or pervasive, Plaintiff has not alleged facts from which the Court could reasonably infer that the conduct occurred because of his race, sex, or age.

The Fourth Circuit has articulated the standard for showing a hostile work environment:

When determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the

---

[7] In his opposition brief, Plaintiff argues that "the 2013-2020 incidents should be considered part of a continuing violation since these incidents 'could not reasonably have been expected to be made the subject of a lawsuit when [they] first occurred because [their] character as a violation did not become clear until [they were] repeated during the limitations period.'" (ECF No. 33-1 at 10 (alterations in original) (citing *Arellano v. Henderson*, No. 98-1348, 1998 WL 792233, at 2 (4th Cir. Nov. 16, 1998) (quoting *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997))).) However, this argument is premised on outdated law.  *Arellano* and *Dasgupta* both rely on *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996). But the Supreme Court in *Morgan* expressly disavowed *Galloway*, holding that the relevant issue is not whether the plaintiff could have reasonably been expected to sue earlier, but rather whether the conduct constituted part of an overall hostile work environment. 536 U.S. at 117–18; *see also Everson v. City of Madison*, 672 F. Supp. 2d 881, 885 (W.D. Wis. 2009) (observing that the Supreme Court "explicitly overruled *Galloway*" and that accordingly a case relying on it "is no longer good law"). Moreover, Plaintiff's assertion that it is enough to show that the otherwise time-barred act is "somehow 'linked' to the violation occurring within the statutory period" (ECF No. 33-1 at 11) is irreconcilable with the holding in *Morgan* that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113.

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Plaintiffs must clear a high bar in order to satisfy the objective severe or pervasive test. Incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (cleaned up and internal citations and quotations omitted).

As this passage indicates, a plaintiff pursuing a hostile work environment claim must allege conduct that rises well beyond the ordinary frustrations and indignities of the workplace, because only "extreme" conduct can "amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). This "demanding" standard is intended to "ensure that Title VII does not become a general civility code." *Id.* (quotation omitted).

### 2. *Discussion*

Here, even after taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Amended Complaint falls far short of alleging the kind of serious behavior that would constitute a hostile work environment. Many of his allegations involve minor disciplinary actions or negative reviews levied against him in response to his unsatisfactory performance. (*See, e.g.*, Am. Comp. ¶¶ 25, 27, 32, 33.) Other allegations involve seemingly routine managerial oversight such as "conduct[ing] daily monitoring of [his] arrival at his work location," a manager "follow[ing] Plaintiff" while Plaintiff was conducting fieldwork, and restrictions on Plaintiff's use of personal leave time, and Plaintiff provides no non-conclusory explanation as to how these activities could be considered severe. (*Id.* ¶¶ 30–36.) *See Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (holding that a plaintiff failed to allege a hostile work environment when

"[t]he alleged conduct consist[ed] primarily of denials of requests to supervisors, negative evaluations of his job performance, and [critical] emails from colleagues"). Plaintiff also alleges one comment that could suggest that he was subject to bias because of his age—in August 2016, a supervisor told Plaintiff that "FUGOPS was not the place for him [and] that Plaintiff should just retire." (Am. Comp. ¶ 29.) This comment may have been inappropriate, but a single, isolated comment cannot create a hostile work environment unless that comment was "extremely serious." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Faragher*, 524 U.S. at 788). Likewise, the comment from Plaintiff's coworker that "[i]f [he] were [Plaintiff's] supervisor, [he] would get [him]" (Am. Comp. ¶ 40), while unprofessional and perhaps inappropriate, is not the kind of extremely serious statement that can constitute a hostile work environment on its own. *Cf. Boyer-Liberto*, 786 F.3d at 281 (holding that isolated use of extremely offensive racial slur by a direct supervisor could suffice to establish the severity prong). Plaintiff may have disagreed with his employer's actions, but "[e]valuation and criticism of one's work performance, while perhaps unpleasant, is not abusive." *Holloway v. Maryland*, 32 F.4th 293, 301 (4th Cir. 2022).

In addition to not being severe, the alleged conduct was not pervasive. To be pervasive, "the harassment must be more than episodic; [it] must be sufficiently continuous and concerted." *Brown v. Batton*, No. 21-1998, 2022 WL 17336572, at *11 (4th Cir. Nov. 20, 2022) (quoting *Faragher*, 524 U.S. at 787 n.1) (alteration in original). "[L]arge temporal gaps between allegations undermine a hostile-work-environment claim." *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 408 (4th Cir. 2022). That is because "[l]arge temporal gaps suggest occasional problems, not pervasive ones." *Id.* Here, Plaintiff alleges a series of events over the course of six years. The gap between individual alleged incidents is often months or years. For instance, there is a nearly

two-year gap (from September 2014 to August 2016) between Claims 3 and 4, and another nearly year-long gap between Claims 7 and 8. (*See* Am. Comp. ¶¶ 27–28, 31–32.) Such sporadic incidents cannot be considered sufficiently frequent and continuous to be pervasive for the purpose of establishing a hostile work environment claim. *See Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996), *abrogated on other grounds by Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ("[T]he incidents that Hopkins recounts occurred intermittently over a seven-year period, with gaps between incidents as great as a year. That alone suggests the absence of a condition sufficiently pervasive to establish Title VII liability.").

Finally, Plaintiff alleges one incident that may have been independently actionable—his reassignment away from the "career enhancing" position on the U.S. Marshal's task force. (Am. Comp. ¶ 26.) A discrete act may constitute part of a hostile work environment "[s]o long as the act is part of the pattern of discriminatory treatment against the employee." *Guessous*, 828 F.3d at 223. But as explained above, the other allegations are too minor and intermittent to constitute a pattern of hostility. In short, Plaintiff has alleged nothing close to the kind of "physically threatening or humiliating" conduct that would give rise to a hostile work environment claim; instead, his "allegations, which largely include the actions taken against [him] in response to the concerns regarding [his] performance, fall well short of alleging an abusive working environment." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011).

Moreover, even assuming that the allegations were sufficiently severe or pervasive, the Amended Complaint provides no basis for the Court to reasonably infer that the alleged conduct occurred *because of* Plaintiff's race, sex, or age. *See Strothers v. City of Laurel*, 895 F.3d 317, 329 (4th Cir. 2018) (explaining that a plaintiff bringing a Title VII hostile work environment claim must show that the harassment occurred "because of" one's protected status). "An inference of

18

race or gender discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances."[8] *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016).

Here, the Amended Complaint is replete with generic, boilerplate statements such as "Plaintiff's similarly situated White, Female and younger co-workers were not subject to said treatment" (Am Comp. ¶ 29) and "Plaintiff was treated less favorably than his similarly situated younger, female and or White co-workers for reasons of his race, age or gender." (*Id.* ¶ 32.) This is deficient pleading; "a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination." *Booth*, 186 F. Supp. 3d at 486. Plaintiff does not identify the names, titles, responsibilities, or supervisors of the alleged comparators. These allegations are far too skeletal to support a reasonable inference that Plaintiff suffered harassment—or any other kind of discrimination, for that matter—on the basis of his race, gender, or age. *See Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190–91 (4th Cir. 2010) (affirming dismissal of a Title VII race discrimination claim when the plaintiff alleged that he "was treated differently as a result of his race than whites" but failed to "establish a plausible basis for believing [that his white coworkers] were actually similarly situated or that race was the true basis for [his] termination"); *Booth*, 186 F. Supp. 3d at 486 (dismissing a Title VII race discrimination claim when the plaintiff stated that another colleague was "similarly situated" but failed to identify her "race, her job titles or responsibilities, or her supervisor"). In short, Plaintiff's

---

[8] "Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). But none of the alleged incidents are inherently suggestive of bias on the basis of race, sex, or age (with the arguable exception of Claim 5, which, as the Court has already explained, is insufficient on its own to state a claim for hostile work environment), and Plaintiff makes no other allegation that could plausibly lead to an inference of discrimination other than through the use of alleged comparators. *See id.* (holding that the plaintiffs must show the existence of valid comparators since they "have based their allegations completely upon a comparison to an employee from a non-protected class").

attempt to show that he was subjected to harassment because of his race, sex, or age rests on little more than "legal conclusion[s] couched as factual allegations," which fail to raise the possibility of a violation of Title VII "above the speculative level," and thus cannot survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Because Plaintiff failed to timely contact an EEO counselor, and because he has failed to plausibly allege a hostile work environment, Claims 1 through 13 are time barred and must be dismissed.

### B.  Timely Claims

The only factual allegations that occurred within 45 days of Plaintiff's contact with the EEO office on July 21, 2020 relate to incidents comprising Claim 14, which relates to DHS's imposition of discipline against him for pursuing outside employment. (*See* Am. Comp. ¶¶ 41–45.)  These allegations, while not time-barred, nevertheless fail to state a claim for either discrimination or retaliation, and therefore will be dismissed.

### 1.  Whether Claim 14 Is Time-Barred under 5 U.S.C. § 7703(b)(2)

DHS contends that because Plaintiff brought a mixed case before the MSPB challenging the DHS's proposal to terminate him, and that Plaintiff did not timely appeal that decision, this Court is barred from considering the allegations comprising Claim 14.[9]  The Court disagrees. Plaintiff did not bring a mixed case before the MSPB. The litigation before the MSPB appears to have focused solely on whether DHS's discipline of Plaintiff violated civil service law. (*See generally* ECF No. 28-7.) DHS concedes this point, but argues that "[a]lthough the MSPB decision did not decide whether the proposed removals/suspension that DHS/ICE imposed on Plaintiff with respect to his engagement in outside employment with Saber were discriminatory or retaliatory,

---

[9] As the Court has explained in Part III, *supra*, these time limitations are not jurisdictional, but they still must be enforced unless waived or subject to equitable tolling.

the MSPB's silence on these issues is not determinative as to whether Plaintiff's claims could proceed to federal court." (ECF No. 28-1 at 24.) However, the only case DHS cites in support of this proposition, *Rodgers v. Perez*, is inapposite. 139 F. Supp. 3d 67 (D.D.C. 2015).[10]

Plaintiff is not seeking review of the MSPB's decision. He does not allege that the MSPB misapplied civil service law, nor does he challenge the MSPB's decision to mitigate his discipline to a letter of reprimand. Instead, Plaintiff simply brings claims of discrimination and retaliation on the basis of facts that partially overlap with those reviewed by the MSPB. The provision setting the 30-day time limit, 5 U.S.C. § 7703(b)(2), applies to "[c]ases of discrimination subject to the provisions of [5 U.S.C.] section 7702[.]" Section 7702, in turn, applies to cases where a petitioner before the MSPB "alleges that a basis for the [adverse employment] action was discrimination prohibited by" the federal antidiscrimination laws. Thus, for Section 7702 to apply, the petitioner must have "allege[d]", before the MSPB, that they suffered from discrimination. If there was no such allegation, then by the plain language of the statute, a case is not "subject to the provisions of [S]ection 7702" for the purposes of Section 7703(b)(2), and thus the 30-day time period for challenging the Board's decision is inapplicable.

In short, somewhere in the byzantine process of the parallel administrative reviews of Plaintiff's complaints before the EEO office and the MSPB, Claim 14—to the extent it alleged

---

[10] In *Rodgers*, the plaintiff brought a "mixed case" before the MSPB, arguing that her employer's actions constituted retaliation in violation of Title VII. 139 F. Supp. 3d at 71–73. The Administrative Law Judge ("ALJ") ruled in favor of the plaintiff, but did not discuss the plaintiff's Title VII claims in his decision. *Id.* at 73. The plaintiff then timely filed a Title VII action in federal district court, and the court held that the plaintiff had adequately administratively exhausted her Title VII remedies. *Id.* at 73–74. In reaching that conclusion, the court held that "the ALJ's silence on the Title VII claims does not bar [the plaintiff] from proceeding in federal court." *Id.* at 79. The Court does not see the relevance of *Rodgers* to this case, because there (unlike here) the plaintiff *did* present a mixed case before the MSPB, and timely appealed the MSPB's final decision, neither of which obtains here. To the extent *Rodgers* is relevant, it would appear to help Plaintiff rather than DHS, given the court's holding that a plaintiff may bring discrimination and retaliation claims in federal court even when the MSPB fails to rule on those claims.

discrimination—seems to have fallen through the cracks. The EEO office declined to fully address these claims on the grounds that they implicated facts before the MSPB; meanwhile, for reasons not apparent on the record, the MSPB never decided (and perhaps was never confronted with) the discrimination claims associated with Plaintiff's outside employment dispute. Under these unusual circumstances, to the extent that any allegations underlying Claim 14 were not properly exhausted, waiver or equitable tolling is appropriate. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (holding that courts may equitably toll a statute of limitations when the plaintiff has been pursuing her rights diligently, and "some extraordinary circumstance" prevented her from timely filing her claim).

Having determined that the Court may properly consider all the factual allegations underlying Claim 14, the Court turns to the question of whether Plaintiff has adequately stated a claim for relief.

### 2. *Legal Standards*

A Title VII discrimination plaintiff must plausibly allege facts that allow a court to reasonably infer that the plaintiff's employer "fail[ed] or refuse[d] to hire or to discharge [him], or otherwise [] discriminate[d] against [him] with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). And, to state a claim for age discrimination under the ADEA, the plaintiff must allege that he "is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age."[11] *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) and 29 U.S.C. § 623(a)(1)).

Plaintiff also brings a claim for retaliation under Title VII. The prima facie elements of a

---

[11] Plaintiff fails to state his age in his pleading. However, the CRCL decision, which was attached to the Amended Complaint, states that he was 51 years old as of March 2023. (ECF No. 25-1 at 8.)

retaliation claim are that (1) the plaintiff engaged in protected activity; (2) the employer took a materially adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action. *Perkins*, 936 F.3d at 213. At the motion to dismiss stage, a plaintiff need not prove these elements, but need only plausibly allege facts that allow a court to reasonably infer that the elements are satisfied. *See Harmon v. Cumberland Cty. Bd. of Educ.*, 186 F. Supp. 3d 500, 506 (E.D.N.C. 2016).

### 3.  Discussion

In his briefing (*see* ECF No. 33-1 at 15–17), Plaintiff relies heavily on the Supreme Court's recent ruling in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024). That case helps Plaintiff insofar as it clarifies that Plaintiff need not show that he suffered a "significant" harm because of his protected status to state a Title VII claim, abrogating precedent from this Circuit and elsewhere to the contrary. *See id.* at 977. But under *Muldrow*, and under the plain terms of Title VII, a plaintiff must still show that the harm he suffered occurred "because of" his protected status. *Id.* at 974 (quoting 42 U.S.C. § 2000e-2(a)(1)). This Plaintiff fails to do. As with the other claims, Plaintiff alleges that he faced adverse employment actions because his employer "den[ied]/depriv[ed] Plaintiff of the same terms, conditions, privileges and opportunities of employment enjoyed by Plaintiff's similarly situated younger, female and White co-workers." (Am. Comp. ¶¶ 39, 44.) But the Court is not required to assume the truth of these conclusory allegations. *See Iqbal*, 556 U.S. at 681. Taking the well-pleaded allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, it would appear that DHS unfairly delayed approving Plaintiff's request for outside employment and then unfairly disciplined or threatened to discipline him for those outside employment activities. Such behavior on DHS's part, if true, might be unprofessional or otherwise unfavorable to Plaintiff, but does not on its own

establish that DHS took these actions "because of" Plaintiff's race, age, or sex.

Turning to Plaintiff's retaliation claims, he has adequately alleged that he took part in protected activity by complaining to his agency's EEO office in July 2021. *See Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 122 (4th Cir. 2021). And, DHS's decision to "threaten[] to terminate Plaintiff's employment for providing physical security services to [a] Marijuana facility" (Am. Comp. ¶ 42), which allegedly "forc[ed] Plaintiff to divest himself of all interest in his company out of fear of defendant terminating his employment" (*id.* ¶44) may constitute an adverse employment action, as it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Williams v. Prince William Cnty.*, 645 F. App'x 243, 244–45 (4th Cir. 2016) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Nevertheless, the Amended Complaint is devoid of factual allegations from which the Court could reasonably infer a causal connection between Plaintiff's protected activity and the adverse employment actions. Plaintiff filed his initial EEO complaints on July 21, 2020, and followed up with a "formal" EEO complaint on November 23, 2020. (Am. Comp. ¶ 42.) And the threats of termination occurred on June 22, 2020 and October 30, 2020. (*Id.* ¶ 41.) As to the first threat, it occurred *before* the first protected activity, and thus cannot have been caused by it. And there was no alleged threat after Plaintiff filed his formal EEO complaint in November 2020. Thus, the only fact possibly supplying an inference of causation is that DHS threatened to fire him a little over three months after he filed his initial EEO complaint.[12] Temporal proximity alone can suffice to establish a causal connection, but the proximity must be "very close." *Roberts*, 998 F.3d at 127 (quotation omitted).   The Fourth Circuit has not adopted a "bright-line rule for temporal

---

[12] A retaliation plaintiff need not necessarily rely on temporal proximity, if there are other allegations that plausibly support an inference that the adverse employment event was causally connected. *See Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021). But here, there are no (non-conclusory) allegations that suggest causation, so Plaintiff necessarily must proceed on a temporal proximity theory.

proximity," but a gap of three months between the protected activity and the adverse employment event is too long to support an inference of causation. *Id.* (quotation omitted).

Because Plaintiff has failed to plausibly allege facts that allow the Court to reasonably infer that DHS retaliated against him because of his protected activity, Plaintiff's retaliation claims must be dismissed.[13]

## V.    CONCLUSION

For the foregoing reasons, a separate order will issue granting Defendant's Dispositive Motion and dismissing Plaintiff's Amended Complaint. The dismissal will be with prejudice with respect to the factual allegations underlying Claims 1 through 13, and Plaintiff will be given the opportunity to move for leave to file a Second Amended Complaint with respect to the factual allegations underlying Claim 14.

DATED this $20$ day of August, 2024.

BY THE COURT:

James K. Bredar
United States District Judge

---

[13] DHS also argues that it "had a legitimate business reason for proposing to remove Plaintiff from federal service and Plaintiff cannot establish pretext." (ECF No. 28-1 at 30.) However, these arguments are properly addressed at the summary judgment stage rather than on a motion to dismiss, and accordingly the Court does not dismiss claims on these grounds. *See Onwudiwe*, 2023 WL 5338156, at *13.