IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GREGORY WEST,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. JKB-23-01661 |
| **KRISTI NOEM,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Plaintiff Gregory West has brought this employment action against Kristi Noem in her official capacity as Secretary of the United States Department of Homeland Security ("DHS").[1] Now pending before the Court is DHS's "Motion to Dismiss or, in the Alternative, for Summary Judgment" (the "Third Dispositive Motion"). (ECF No. 44.) The Third Dispositive Motion, which will be construed as a motion to dismiss, will be granted in part and denied in part. Plaintiff's discrimination claims will be dismissed with prejudice, but his retaliation claim will be permitted to proceed to discovery.

### I.   FACTUAL ALLEGATIONS

Plaintiff is an African American man from Frederick, Maryland who was 51 years old as of 2023. (ECF No. 41 ¶ 1; *id.* at 36 (decision of DHS's Office for Civil Rights and Civil Liberties).)[2] He is (and was, at all relevant times) an employee of the Baltimore Field Office of

---

[1] This action was originally brought against then-DHS Secretary Alejandro N. Mayorkas. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mayorkas's successor, Kristi Noem, is automatically substituted as the proper defendant. The Clerk will be directed to update the case caption on the Court's electronic docket accordingly.

[2] The Second Amended Complaint states that Plaintiff was 49 years old "at all material times herein." (ECF No. 41 ¶19.) This cannot be true—the Complaint contains allegations spanning over five years, from 2015 through 2020. (*See id.* ¶¶ 25, 49.) Plaintiff's precise age is not important at this juncture; the Court will

Immigrations and Customs Enforcement ("ICE"), an agency within DHS, where he has worked since 2007. (*Id.* ¶¶ 1, 22 24.)

In July 2015, Plaintiff filed an application for DHS to approve his request to engage in "Outside Employment Or Other Activity." (ECF No. 41 ¶ 25.) In the application, Plaintiff stated that the "Business involves providing services for Security Consultation, Information Technology, as well as, Physical Security." (*Id.*) Plaintiff further stated that the position "would not conflict with my official duties or violate[] any laws or regulations." (*Id.*) The following month, three different ICE employees reviewed and provisionally approved the request; however, his immediate supervisor, Raymond Smith, "refused to forward Plaintiff's application for the final and necessary signature[,] i.e., the signature of the Baltimore Field Office Director." (*Id.* ¶ 26.) Plaintiff attributes this delay to Smith's statement from April 2015 in which he said: "[i]f I were your supervisor, I would get you." (*Id.* ¶ 34.) Plaintiff finally secured approval for the request in March 2017, when Baltimore Field Office Director Dorothy Herera-Niles signed off on the request. (*Id.* ¶ 27.)

Plaintiff alleges that the 19-month delay in securing approval for his request to obtain outside employment was the result of discrimination. (*Id.* ¶ 27.) He identifies three purportedly similarly situated coworkers, two of whom were white and third was Asian American. (*Id.* ¶ 30.) These individuals—Brandon Zumbano, Craig Schaefer, and Xiao Zheng—received approvals for their requests to engage in outside work within 30 days. (*Id.* ¶ 30.) All three were, like Plaintiff, Deportation Officers ("DOs") working out of the Baltimore Field Office under Smith's supervision. (*Id.*) Zumbano and Schaefer also sought to work in the "security" field, while Zheng

---

assume Plaintiff was over the age of 40 (as is required for the protections of the ADEA to apply) at all relevant times.

sought to work in "Real[]Estate."³ (*Id.*) Plaintiff states that the delay resulted in his loss of income and earning opportunities, and also caused him to "suffer embarrassment, humiliation, shame and frustration and injury to professional reputation." (*Id.* ¶ 32.)

Notwithstanding the delay, within a few months of the approval, Plaintiff's business prospects appeared promising—as of August 1, 2017, he had "just signed a lucrative contract with Green Leaf Medical (a duly state licensed marijuana facility) to provide security services for $218,400 per year . . ." (*Id.* ¶ 37.) He also signed similar contracts with other marijuana dispensaries. (*See id.* at 56–97 (copies of contracts between Plaintiff's business and clients).)

Around this time, however, supervisors at ICE began to rethink their decision to approve Plaintiff's outside employment. They expressed concern that Plaintiff's business involved providing security services to state-licensed marijuana dispensaries. (*See* ¶ 35.) In October 2017, Plaintiff was interviewed by ICE investigators about his outside employment, and "[s]hortly thereafter," his security clearance and his weapon were "taken away." (*Id.* ¶ 38.) Around this time, ICE also "threatened to terminate Plaintiff's employment" because of his security business. (*Id.* ¶ 39.) Plaintiff was ordered to "completely divest and not associate himself" with his outside business to avoid being fired. (*Id.* ¶ 40.) This all occurred despite an ICE ethics lawyer advising him "that there was nothing illegal and no issues with Plaintiff providing physical security services to said state licensed marijuana facility." (*Id.* ¶ 39.)

His employer's pressure ultimately "forced" Plaintiff to "give up all of his interest in his

---

³ Plaintiff also identifies six other individuals, some identified by first name only and some of whom are unnamed, all of whom are white, who are "Plaintiff's comparables, identical in circumstances, job titles, job responsibilities, supervisors, and some in every way as" Zumbano, Schaefer, and Zheng. (*Id.* ¶ 31.) However, the relevance of these six other comparators is left unexplained. Unlike with respect to the three fully-named comparators, Plaintiff does not allege that these six comparators also sought, let alone received, approval for outside employment.

outside employment/business . . ." (*Id.* ¶ 41.) In December 2017, in response to his divestment, DHS "restored all of Plaintiff's security clearances[,] returned his weapon and allowed Plaintiff to resume his normal duties." (*Id.*) Plaintiff alleges that, when he subsequently retained counsel, he learned that it was "lawful" and not contrary to DHS rules for him to provide "security services to state licensed marijuana facilities and that he did not have to divest himself of his authority to run said business." (*Id.*) "Had Plaintiff known this at the time," he says, "he would have continued operating said business." (*Id.*)

Throughout 2018, 2019, and the first half of 2020, "Plaintiff['s] security services were continuously requested by various duly state licensed marijuana facilities that wanted to contract" with him, but he "continuously denied said requests" "out of fear that Defendant would follow through on its threat to fire him . . ." (*Id.* ¶ 47.) During this period, Plaintiff "continued to question, complain, protest, and challenge his supervisor regarding Defendant's denial" of his request to pursue his chosen line of outside employment. (*Id.* ¶¶ 42, 44, 46.) He "verbally complained that his similarly situated White, Female, younger and Asian co-workers were allowed to pursue their outside employment once approved to do so but Plaintiff, an African American, was not." (*Id.*) DHS did not respond to these complaints. (*Id.*)

"On June 22, 2020, and again on October 30, 2020, Defendant served Plaintiff with a notice of removal of Plaintiff from his employment with Defendant for 'KNOWINGLY AND INAPPROPRIATELY ASSOCIATING WITH A MEDICAL MARIJUANA FACILITY'." (*Id.* ¶ 48.) At the same time, DHS suspended Plaintiff with pay for eight months. (*Id.*) Plaintiff alleges that DHS's "attempt to remove/fire Plaintiff this time around was clearly retaliation for Plaintiff's ongoing protests and complaining about being discriminated against by denying Plaintiff the opportunity to engage in outside employment because of his race (African American), age (49),

and gender (male)." (*Id.* (cleaned up).)

In response to this threatened termination, on July 21, 2020, and again on November 23, 2020, Plaintiff filed "informal" and "formal" complaints, respectively, with his agency's Equal Employment Opportunity ("EEO") office. (*Id.* ¶ 49.) These complaints alleged that DHS denied Plaintiff the benefit of the opportunity to pursue outside employment on the basis of his race, age, and sex. (*Id.*)

Plaintiff alleges that "the inference of discriminatory intent by Defendant is evident by Defendant's proffered explanation for it[s] differential treatment of Plaintiff in comparison to Plaintiff's above described similarly situated co-workers." (*Id.* ¶ 50 (emphasis deleted).) He asserts that DHS's purported reason for its resistance to Plaintiff's outside employment—that the business related to marijuana—is belied by the fact that ICE ethics counsel, the agency's "Commercial/Administrative Law division," and the "Labor/Employment Law division all . . . concurred that there was nothing illegal and no issues with Plaintiff providing physical security services to said state licensed marijuana facility." (*Id.* ¶ 51.) Further, Plaintiff notes that he "had the full approval of the Baltimore Field Office including its Director." (*Id.* ¶ 52.)

The operative Third Amended Complaint brings four counts. Counts I through III allege discrimination on the basis of race, gender, and age, respectively. (*Id.* ¶¶ 53–70.) Counts I and II assert violations of 42 U.S.C. § 2000e-2(a); Count III, which erroneously cites to the same statutory provision, is in actuality a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623.[4] Count IV, which is brought under 42 U.S.C. §2000e-3(a), alleges that DHS's actions

---

[4] This is now the second time that Plaintiff's counsel has cited to the incorrect statute for an ADEA claim, despite the Court's having already brought this error to Plaintiff's counsel's attention. (*See* ECF No. 35 at 8 n.3.) Plaintiff admits that he made the error again, and that he intended to cite to the ADEA. (ECF No. 47-1 at 8–9.) Plaintiff's counsel is admonished to carefully proofread documents before submitting them to the Court.

constituted retaliation for Plaintiff's opposition to its discriminatory practices. (*Id.* ¶¶ 71–74.)

## II. PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint *pro se* in this Court on June 20, 2023. (ECF No. 1.) Prior to that filing, Plaintiff's had pursued his claims against DHS through two parallel administrative proceedings, one before DHS's EEO office, and the other before the Merit Systems Protection Board ("MSPB"). The Court has previously discussed the somewhat complicated interplay between these two proceedings at length (*see* ECF No. 35 at 5–8, 11–13, 20–22) and will not recount that discussion here.

In November 2023, Defendant moved to dismiss or for summary judgment (the "First Dispositive Motion"). (ECF No. 16.) While the First Dispositive Motion was pending, Plaintiff retained counsel and sought—and obtained—leave to amend the Complaint. Accordingly, on January 24, 2024, the Court denied the First Dispositive Motion as moot. (ECF No. 24.) DHS subsequently filed a renewed dispositive motion (the "Second Dispositive Motion") directed against the First Amended Complaint. (ECF No. 28.) On August 20, 2024, the Court granted the Second Dispositive Motion, holding that most of Plaintiff's claims were time-barred, and that, with respect to the sole category of claims that was not time-barred (the claims relating to Plaintiff's outside employment), Plaintiff failed to plausibly plead that he suffered any adverse employment action on the basis of his race, sex, or age. (ECF No. 35.) The dismissal operated with prejudice with respect to the time-barred claims, but was without prejudice as to the outside employment claims. (*Id.*; ECF No. 36.) Plaintiff then sought leave to file the now-operative Second Amended Complaint. (ECF No. 39.) On November 6, 2024, the Court granted that motion, which was unopposed, and directed DHS to file a responsive pleading or appropriate motion. (ECF No. 40.) The instant Third Dispositive Motion followed. (ECF No. 44.)

6

### III. LEGAL STANDARDS

**A. Evaluating a Motion to Dismiss or, in the Alternative, for Summary Judgment**

Defendant's Third Dispositive Motion is brought as a motion to dismiss or, in the alternative, for summary judgment. As the Court has previously explained:

> "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd*, 780 F.3d 597, 606 (4th Cir. 2015) (quotation omitted). However, if the motion is in the alternative a motion for summary judgment a court may in its discretion consider matters outside of the pleadings. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). If the court does so, generally "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

(ECF No. 35 at 8–9.)

In this case, Plaintiff requests that the Court not consider the motion as one for summary judgment, on the grounds that he has not had the opportunity to take discovery. However, this objection—which was lodged by Counsel in his opposition brief (ECF No. 47-1 at 12)—was not procedurally proper: "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal quotation marks and citation omitted). Ordinarily the "failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Id.* (citation omitted).

Nevertheless, the Court has discretion to excuse the failure to file an affidavit, *see id.* and the Court will exercise its discretion in this case. Here, Plaintiff has had no opportunity to conduct

any discovery in this case, and although he did not present his objection in the proper format, it is clear that discovery could be helpful in proving his one claim that is not facially deficient. *See id.* ("When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(f) affidavit if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary."); *ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, Civ. No. ELH-20-3783, 2021 WL 4148456, at *6 (D. Md. Sept. 10, 2021) (excusing the failure to file a Rule 56(f) affidavit when "[n]o discovery has occurred" and concluding that "summary judgment would be premature because the factual record is not fully developed").

The Court will excuse the failure to file a Rule 56(f) affidavit and construe the Dispositive Motion as a Motion to Dismiss under Rule 12(b)(6). Plaintiff's Counsel is advised, however, that the Court is unlikely to look on future procedural defects with such forbearance.

### B. Legal Standard for a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint's claims. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). However, conclusory allegations are not entitled to the assumption of truth, nor are legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). To survive a motion to dismiss, the complaint "must include 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Langford*, 62 F.4th at 124 (quoting *Iqbal*, 556 U.S. at 678 (2009)). In other words, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a motion to dismiss, the Court limits its review to the complaint, documents attached to the complaint as exhibits, and documents attached to the motion, if those documents are integral to the complaint and their authenticity is not disputed. *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021).

Finally, as relevant here, an employment discrimination plaintiff need not plead a prima facie case to survive a motion to dismiss; instead, the plaintiff must simply plausibly allege facts that, taken as true, allow a court to reasonably infer that the elements of a cause of action have been satisfied. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616–17 (4th Cir. 2020).

## IV. ANALYSIS

Here, most of the allegations are time-barred, as Plaintiff himself concedes. And with respect to the two incidents that are not time-barred, Plaintiff fails to plead facts which would give rise to a plausible inference of discrimination on the basis of race, sex, or age. With respect to his retaliation claim, however, Plaintiff manages—if only barely—to state a plausible claim for relief.

### A. Time-Barred Incidents

As the Court has previously explained, "a federal employee complaining of discrimination in the workplace must initiate contact with an EEO counselor within 45 days of the allegedly discriminatory act." (ECF No. 35 at 13–14 (citing 29 C.F.R. § 1614.105(a)).) Incidents that occurred before the 45-day period preceding EEO contact are considered time-barred and (absent waiver or equitable tolling) are not actionable. (*Id.*)

In this case, Plaintiff first complained of discrimination to his agency's EEO office on July 21, 2020. (ECF No. 41 ¶ 4.) In his filing in opposition to the Dispositive Motion, Plaintiff expressly "concedes that discriminatory events that occurred prior to June 6, 2020 are time barred."

9

(ECF No. 47 at 1.) Accordingly, all claims relating to alleged discrete acts of discrimination prior to June 6, 2020, will be dismissed.

### B. Timely Incidents

#### 1. *Discrimination Claims (Counts I–III)*

A Title VII discrimination plaintiff must plausibly allege facts that allow a court to reasonably infer that the plaintiff's employer "fail[ed] or refuse[d] to hire or to discharge [him], or otherwise [ ] discriminate[d] against [him] with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination either by producing "direct evidence" of discrimination, or by establishing a prima facie case, the elements of which are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). And, to state a claim for age discrimination under the ADEA, the plaintiff must allege that he "is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) and 29 U.S.C. § 623(a)(1)). As discussed above, a plaintiff need not establish a prima facie case of discrimination at this stage.

The only incidents of alleged discrimination or retaliation that are not time-barred are the two incidents in 2020 (on June 22, and again on October 30) in which DHS threatened to remove Plaintiff from his employment and temporarily suspended him with pay, purportedly because of his association with a marijuana business. (ECF No. 41 ¶ 48.) But the Second Amended Complaint provides no basis for the Court reasonably to infer that DHS's imposition of discipline

occurred "because of" his race, sex/gender, or age. (*See* ECF No. 35 at 23 ("[U]nder [*Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024)], and under the plain terms of Title VII, a plaintiff must still show that the harm he suffered occurred 'because of' his protected status.").)

On this issue, *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, to which both parties cite, is instructive. 780 F.3d 582 (4th Cir. 2015). In that case, the plaintiff—an African American woman and a state government employee—applied for two open positions with the State Highway Administration. Although she was allegedly "more than qualified" for both positions, the Highway Administration gave the positions to "non-Black candidates." *Id.* at 583. The district court dismissed her claim of racial discrimination, holding that she failed to present direct evidence of discrimination or to establish a prima facie case of discrimination. *Id.* at 584. On appeal, the Court of Appeals held that the district court erred in requiring the plaintiff to establish a prima facie case of discrimination at the motion-to-dismiss stage. *Id.* at 585. Nevertheless, the court held that a plaintiff complaining of employment discrimination must still allege facts that support a "reasonable inference that the decisionmakers were motivated by bias." *Id.* at 586. That is so because the cause of action created by the statute under which she filed expressly requires that she show that the adverse employment action occurred "*because of* [her] race." *Id.* at 585 (emphasis and alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). But instead of providing specific factual allegations to support her claim of discrimination, the plaintiff rested on "naked" allegations of prejudice and "conclusory" allegations that the State Highway Administration chose to hire other candidates because of racial bias. *Id.* at 585–86. Thus, the court upheld the dismissal. *Id.* at 588.

Like the complaint in *McLeary-Evans*, the Second Amended Complaint "fail[s] to state a plausible claim for relief, as required by Federal Rule of Civil Procedure 8(a)(2)." *Id.* The

complaint is replete with conclusory allegations that, for instance, DHS "den[ied] Plaintiff the opportunity to engage in outside employment because of his race, (African American), age (49), and gender (male)." (ECF No. 41 ¶ 48 (cleaned up).) But this is precisely the sort of "naked" allegation that does not suffice to state a claim for discrimination. The mere fact that DHS threatened to terminate Plaintiff because of his association with a marijuana business is perhaps *consistent* with, but not inherently *suggestive* of discrimination. *See Twombly*, 550 U.S. at 557 (allegations in a complaint must "plausibly suggest[]," rather than be "merely consistent with" unlawful behavior). After all, marijuana remains a Schedule I controlled substance under federal law (notwithstanding its partial decriminalization at the state level), *see* 21 U.S.C. § 812(c), and a federal law enforcement agency such as ICE has a legitimate interest in ensuring that its employees not violate federal law or associate with others who may be violating federal law. This remains the case even if some individual supervisors or attorneys within ICE thought that Plaintiff's choice of outside employment was not inappropriate.

Because the complained-of actions are not inherently suggestive of prejudice, in order to raise a plausible inference of race, sex, or age bias, the Plaintiff would need to identify a similarly situated colleague who *also* sought permission to associate with businesses selling marijuana or other federally controlled substances, and who received more favorable treatment than he did.[5] He does not do so. The only alleged comparators that Plaintiff identifies with any specificity— Zumbano, Schaefer, and Zheng—*might* suffice to establish a plausible inference of discrimination with respect to the 19-month delay in DHS's original approval of his outside employment request

---

[5] As the Court previously noted, "Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim," but they must "show the existence of valid comparators" when, as here, "none of the alleged incidents are inherently suggestive of bias on the basis of race, sex, or age," and instead the allegations depend "completely upon a comparison to an employee from a non-protected class." (ECF No. 35 at 19 n.8 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).)

(if the Court assumes that, at the time of the delay, DHS was unaware that the requested employment involved marijuana businesses). But, as the Court has held above, and as Plaintiff concedes, any claim relating to that delay is time-barred. Zumbano, Schaefer, and Zheng are not valid comparators with respect to DHS's proposal to terminate Plaintiff in 2020, because they are not alleged to have also sought to work in a marijuana-related field or some other field that is in tension with federal law. *See Coleman*, 626 F.3d at 191 (holding a plaintiff failed to state a claim for discrimination based on an alleged comparator, when "[t]he complaint does not even allege that [the comparator's] 'outside business involvements' were improper, let alone that any impropriety was comparable to the acts Coleman was alleged to have committed"); *see also Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) ("[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (cleaned up)). Without proper comparators, "only speculation can fill the gaps in [his] complaint" and allow the Court to infer that race-, sex-, or age-based bias—as opposed to a concern about his perceived association with marijuana businesses—was the reason for DHS's treatment of him. *Id.* at 586.

In short, as in *McLeary-Evans*, the inference of invidious discrimination is simply "not plausible in light of the 'obvious alternative explanation,'" *id.* at 588 (quoting *Iqbal*, 556 U.S. at 682), which here is that ICE and DHS determined that an employee's association with businesses involved in the marijuana trade would not be appropriate. Counts I, II, and III will be dismissed.

### 2. *Retaliation Claim (Count IV)*

The Court reaches a different conclusion when it comes to Plaintiff's retaliation claim.

Here, the Court concludes that Plaintiff has just edged his claim across the threshold from conceivable to plausible.

Title VII prohibits an employer from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The elements of a prima facie case of retaliation are that: (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse action against him; and (3) there is a causal link between the two events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (en banc); *Laird v. Fairfax County*, 978 F.3d 887, 893 n.6 (4th Cir. 2020) (noting that the adverse action need not be an "adverse *employment* action" (emphasis added)). To satisfy the second element, the employer must have taken an action "that 'well might have dissuaded a reasonable worker' from engaging in protected conduct." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Thus, the complained-of action must be "materially adverse," with "some significant detrimental effect," rather than a merely "insubstantial or trivial" incident. *Laird*, 978 F.3d at 893 (cleaned up).[6] At the motion-to-dismiss stage, a plaintiff need not establish a prima facie case, but must simply "alleg[e] facts that plausibly support a conclusion that defendant took adverse actions against plaintiff as a result of plaintiff's protected activity." *Nifong v. SOC, LLC*, 190 F. Supp. 3d 549, 560 (E.D. Va. 2016). However, the Court uses those elements as a guide in the below discussion.

Turning first to the protected activity and causation inquiry, the Court finds these elements

---

[6] In *Muldrow v. City of St. Louis*, the Supreme Court held that a plaintiff alleging Title VII discrimination need not show that she suffered a "significant" harm in order to state a claim for relief, abrogating contrary caselaw from this Circuit and elsewhere. 601 U.S. 346, 359 (2024). However, that decision was confined to claims for discrimination, not retaliation—the Court expressly recognized that plaintiffs alleging retaliation must still show that "the retaliatory action is '*materially* adverse,' meaning that it causes '*significant*' harm." *Id.* at 348 (emphases added) (quoting *Burlington*, 548 U.S. at 68).

easily met. From January through June 2020, Plaintiff "verbally complained" to his supervisor, Vernon Liggins, that DHS's refusal to permit him to pursue his chosen line of outside employment was due to sex- and/or race-based discrimination.[7] (ECF No. 41 ¶ 46.) These alleged informal complaints constitute protected activity for the purpose of a Title VII retaliation claim. *See Faulkenberry v. U.S. Dep't of Defense*, 670 F. Supp. 3d 234, 258 (D. Md. 2023) (citing *Volochayev v. Sebelius*, 513 F. App'x 348, 354 (4th Cir. 2013). On June 22, 2020, DHS served Plaintiff with the notice of removal and placed him on paid leave. (*Id.* ¶ 48.) Drawing all reasonable inferences in favor of Plaintiff, as the Court must at this stage, this close temporal proximity—at least some of Plaintiff's alleged verbal complaints occurred the same month as DHS's adverse actions—is enough to support an inference of causation. *See Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 126 (4th Cir. 2021) (a "very close" temporal proximity between the employer's knowledge of a protected activity and the adverse action is sufficient).

As for the material adversity element, some courts in this Circuit have held that brief suspensions without pay do not constitute adverse action for the purpose of a title VII retaliation claim. *See, e.g., Grice v. Baltimore County*, Civ. No. JFM-07-1701, 2008 WL 4849322, at *8 (D. Md. Nov. 5, 2008) (month-long paid leave); *Jarvis v. Enterprise Fleet Servs. & Leasing Co.*, Civ. No. DKC-07–3385, 2010 WL 1068146, at *18 (D. Md. Mar. 17, 2010) (two-day paid suspension); *Ellis v. Kanawha Cnty. Pub. Libr.*, Civ. No. 2:15-05698, 2018 WL 4293137, at *3 (S.D.W. Va. Sept. 10, 2018) (week-long paid suspension), *aff'd on other grounds*, 756 F. App'x 323 (4th Cir. 2019). But the caselaw is not unanimous on this point. *See Blakes v. City of Hyattsville*, 909 F.

---

[7] Plaintiff also alleges that he complained of age-based discrimination during that time period. (*Id.*) But complaints of age discrimination are not protected activity under Title VII's retaliation provision; instead, they are protected under an entirely separate statute. *Faulconer v. Centra Health*, 808 F. App'x 148, 153 (4th Cir. 2020). Thus, to the extent that Plaintiff seeks to advance a theory of Title VII retaliation on the basis of complaints of age discrimination, that theory is not cognizable. *See id.*

Supp. 2d 431, 442 (D. Md. 2012) (suspension without pay may constitute a materially adverse action for purpose of a Title VII retaliation claim); *Brown v. Hydrochem LLC*, 2022 WL 1538622, at \*2 (three-day paid suspension, coupled with reduced work opportunities upon return from suspension, sufficed to state a claim).

Here, the alleged paid suspension was eight months long, which is notably longer than the days-to-weeks long suspensions that have been held not to be materially adverse. In addition, the suspension was coupled with a proposal to terminate. A proposal to terminate *alone* may also be insufficient to be adverse action. *See, e.g.*, *Martin v. Sunlight Fin., LLC*, Civ. No. 3:20-725-MOC-WCM, 2021 WL 3009018, at \*2 (W.D.N.C. July 15, 2021); *Terry v. Perdue*, Civ. No. JKB-18-031, 2018 WL 4494883, at \*6 (D. Md. Sept. 18, 2018). But, in the particular circumstances of this case, and viewing the evidence in the light most favorable to Plaintiff, the Court is able to make a plausible inference that the eight-month suspension, coupled with the proposal to terminate, was sufficiently onerous that it "well might have dissuaded a reasonable worker," *Burlington*, 548 U.S. at 68, from complaining of discrimination.

Accordingly, the Court concludes that Plaintiff has adequately pleaded a claim for Title VII retaliation with respect to the June 22 notice of removal and suspension, if only just barely. Accordingly, the Dispositive Motion, construed as a motion to dismiss, must be denied with respect to Count IV. *Cf. Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes [the Court] that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks and citation omitted)).

That said, the scope of the remaining retaliation claim is narrow. The only allegations that are legally sufficient are those relating to the June 2020 proposed removal and suspension. With respect to the October 2020 proposed removal, there are no factual allegations suggesting that this

had anything to do with retaliation, as the last alleged protected activity stopped in June. The Court has already held that this gap is too long to support an inference of causation. (ECF No. 35 at 24–25 (citing *Roberts*, 998 F.3d at 127).)

## V.   CONCLUSION

For the foregoing reasons, a separate order will issue granting in part and denying in part the Third Dispositive Motion. Counts I through III of the Second Amended Complaint will be dismissed with prejudice, but Plaintiff will be permitted to proceed with respect to Count IV.

DATED this __21__ day of March, 2024.

BY THE COURT:

_James K. Bredar_
James K. Bredar
United States District Judge